# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**LARICIA BRUNSON**,                                    Case Number 5:14CV1317

     Plaintiff,

                                                   Magistrate Judge James R. Knepp, II

     v.

**COMMISSIONER OF SOCIAL SECURITY**,     MEMORANDUM OPINION AND

     Defendant.                                      ORDER

## INTRODUCTION

Plaintiff Laricia Brunson seeks judicial review of Defendant Commissioner of Social Security's decision to deny supplemental security income ("SSI") and disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI and DIB on March 1, 2011, alleging disability beginning on December 5, 2010. (Tr. 288-98). These claims were denied initially and upon reconsideration (Tr. 258-64, 270-84). Plaintiff then requested a hearing before an administrative law judge ("ALJ") on October 21, 2011. (Tr. 283-84). After a hearing where Plaintiff and a vocational expert testified, an ALJ found her not disabled. (Tr. 44-64). On April 19, 2014, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final

decision of the Commissioner. (Tr. 1-4). On June 18, 2014, Plaintiff filed the instant case. (Doc. 1).

***Vocational History and Personal Background***

Born June 2, 1969, Plaintiff was 41 years old on December 5, 2010, her alleged disability onset date. (Tr. 321). Plaintiff has a GED, a medical assistant certificate, and is able to communicate in English. (Tr. 58, 326). Plaintiff's past work included working at Marc's Department Store and Hill's for six months each, as a cashier. (Tr. 89). She had also worked as a data entry clerk and was dismissed in 2009. (Tr. 89). Plaintiff's most recent employment was working as a Home Health Aide, but she could not continue because "[she was no longer able to concentrate on [her] job." (Tr. 89).

At the time of the hearing, Plaintiff lived by herself and had three adult children. (Tr. 90). She had not driven in four years and did not have a valid driver's license. (Tr. 90). During the day, Plaintiff cleaned the house, but got distracted doing so, and her boyfriend did the shopping and helped her cook dinner. (Tr. 91). Plaintiff had recently taken online classes for office administration, but did not pursue it further after six months.

***Medical History***

Plaintiff began mental health treatment at Portage Path Behavioral Health in December 2010. (Tr. 457). She reported having anxiety issues, depression, difficulty getting out of bed, and difficulty performing the activities of daily living. (Tr. 457). In January 2011, Plaintiff was treated by social worker Andrea Reddest, and reported feeling depressed, having poor sleep patterns, poor motivation, loneliness, and feelings of worthlessness. (Tr. 53, 398-99). However, Plaintiff also was reported to have had a good relationship with her boyfriend, was cooperative, had linear thoughts, was generally calm and well-kempt with fair eye contact, her cognition was

2

grossly intact, and she denied having any violent ideation. (Tr. 398-99). Further, in February 2011, Plaintiff reported she was anxious and had trouble sleeping, but said she was no longer depressed. (Tr. 393). Plaintiff's cognition remained intact, her thoughts were linear and she had good eye contact yet she believed others were talking about her and she heard voices, but she denied having any violent thoughts. (Tr. 392-93).

In March 2011, Plaintiff had coherent and goal-oriented thoughts, despite having ongoing auditory hallucinations. (Tr. 385). In May 2011, a progress report indicated Plaintiff reported hearing negative things on a weekly basis. (Tr. 457). She had a physical examination in June 2011, and was reported to have continued depression, fatigue, poor concentration, restlessness, and suicidal thoughts; she was advised to see a mental health professional as soon as possible. (Tr. 54, 435-38). She also complained of back, shoulder, and arm pain. (Tr. 435-36). In August 2011, Plaintiff experienced depressive symptoms in addition to anger, irritability, and decreased energy and motivation. (Tr. 459).

Plaintiff was seen by Andrea Reddest in September 2011, reporting significant sleep disturbances and crying spells. (Tr. 472). Reddest opined Plaintiff would have noticeable difficulty for more than twenty percent of the work day in remembering locations and work-like procedures; understanding and carrying out short and simple instructions; and maintaining attention and concentration for an extended period of time. (Tr. 461). In December 2011, Plaintiff quit her job because of back pain, but reported therapy helped alleviate stress. At this time, she had become engaged to her boyfriend, and believed she communicated better with him. (Tr. 468).

Plaintiff was admitted to Summa Western Reserve Hospital emergency room on April 9, 2012, with tongue swelling, dysarthria, left side weakness, and was diagnosed with a stroke. (Tr.

56, 483, 528). She displayed some weakness in her left arm and facial asymmetry in her right lip, with decreased sensation in the left maxillary and mandibular region. (Tr. 56, 529). Chest imaging from the visit showed no acute cardiopulmonary process. (Tr. 56, 533). A CT scan of Plaintiff's head revealed ocular proptosis, but no acute intracranial process. (Tr. 531). Plaintiff's MRI showed mildly diminished vertebral basilar system, but no evidence of stenosis, obstruction, or aneurysm (Tr. 56, 483, 520). During the stay, Plaintiff had problems controlling her left side, which improved along with her muscle strength during the stay. After three days, Plaintiff was feeling well and had progressed with physical therapy; at discharge, her speech was better and she had normal strength. (Tr. 483).

At a May 2012 follow up with Maureen Vantine, NP, Plaintiff reported some mild memory problems, impaired speech in the morning, and dizziness. (Tr. 56, 548). Plaintiff also complained of right knee pain with cracking, popping, and difficulty walking. (Tr. 56, 548). On examination, Plaintiff was obese, had clear lungs, had limited range of motion and crepitus on flexion in her right knee without swelling, redness, or tenderness, and had mild strength deficits in her right extremities. (Tr. 549, 551).  She also had mildly limited motion in her left knee with no other symptoms, demonstrated a slow and mildly unsteady gait favoring her left leg, but had normal strength. (Tr. 549, 551).

Mentally, Plaintiff was assessed as having mild depression overall and normal cognition. (Tr. 548-49). She had slowed activity, but was cooperative and had logical thoughts. (Tr. 54, 570). She also reported substantial depression, paranoid thoughts, and excessive sleeping, but her examination otherwise remained stable with no hallucinations or delusions. (Tr. 568).

Ms. Vantine, completed a physical assessment on May 7, 2012, noting Plaintiff suffered a stroke that resulted in left arm and leg weakness, osteoarthritis, and also opined Plaintiff could

4

stand and/or walk for only ten minutes without interruption. (Tr. 538). She concluded Plaintiff could lift ten to twenty pounds occasionally and five to ten pounds frequently, could stand and walk at most one hour per work day, could never climb, kneel, or crawl, and could be off task ten percent of the day because her symptoms impaired her attention and concentration. (Tr. 57, 538-39). Plaintiff's gait was unsteady secondary to her stroke and arthritis in the right knee. (Tr. 538). She also noted decreased left hand, arm, and leg strength and limited Plaintiff to sedentary work (Tr. 539).

In July 2012, Plaintiff told her mental health physician she was doing well, was in a good mood, and sleeping well. (Tr. 562). She reported poor concentration and memory after her stroke, but she had logical thoughts and good insight. (Tr. 54, 562). In August 2012, Plaintiff reported experiencing worsening right knee pain with cracking and popping with her symptoms aggravated by moving and walking. (Tr. 541). Upon examination, the specified mobility range is the same for Plaintiff as it was in May 2012. (Tr. 56, 542). Plaintiff reported she regularly cried herself to sleep, was withdrawn, anxious and depressed, but retained logical thoughts and denied suicidal ideation in September 2012. (Tr. 54, 599).

In October 2012, Plaintiff reported she spent more time with her grandson and went to church (Tr. 54, 596). She also asserted she had occasional hallucinations, was socially isolated, but continued to take her medication. (Tr. 594-95). Ms. Vantine reported Plaintiff had an absence seizure disorder two weeks earlier with tremors in her body. (Tr. 56, 575). Plaintiff complained of insomnia, fatigue, anhedonia, anxiousness, and fear of being alone; while Ms. Vantine noted Plaintiff continued to gain weight. (Tr. 54, 56. 575, 591).

In a letter dated November 28, 2012, Plaintiff's treating sources at Portage Path, including Yuan-Hua Thakore, M.D. and Heather Poma, PsyD, opined Plaintiff's symptoms were

5

debilitating socially and vocationally; she could not even work part-time. (Tr. 55, 579). They also opined Plaintiff would have difficulty more than twenty percent of the day following detailed instructions, working with others, making simple decisions, interacting with others, and adapting to changes. (Tr. 55, 580-81). Plaintiff's diagnoses were expanded to include Schizoaffective Disorder (Depressive Type) and Post-Traumatic Stress Disorder. (Tr. 579). Her symptoms included difficulty concentrating, insomnia, social isolation, auditory hallucinations, and flashbacks and nightmares about previous traumatic events. (Tr. 579). As of December 2012, Plaintiff was still experiencing auditory hallucinations and the frequency of the voices increased when she left her house; and she was forced to wear headphones to drown them out. (Tr. 583).

***VE and ALJ Decision***

Bruce Holderead, vocational expert ("VE"), testified at the hearing. (Tr. 81). The ALJ asked the VE in a hypothetical to consider a person of the same age, education, and work experience as the claimant. (Tr. 109). This individual would be able to work at the light level, could never climb ladders, ropes or scaffolds, could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 109).  Also she could frequently finger objects bilaterally, be frequently exposed to extreme heat and extreme cold, frequently be exposed to environmental irritants in fully ventilated areas, and could never use moving machinery or be exposed to unprotected heights. (Tr. 109). Also in the hypothetical, Plaintiff could not do commercial driving, but could perform simple, routine, and repetitive tasks, and was limited to a work environment free of fast-paced production requirements, involving simple work-related decision and routine workplace changes. (Tr. 109-10). The VE was asked whether Plaintiff could return to her past relevant work and the VE said she could not. The VE was then asked if there were jobs Plaintiff could perform and he replied in the affirmative. (Tr. 110). The jobs the VE gave were

6

cashier II, sales attendant, cleaner, and housekeeper. (Tr. 110). All three jobs are described as being light exertional level occupations and are unskilled. (Tr. 110).

A second hypothetical was asked which included the same attributes as the first one, but this individual would be limited to occasional fingering and handling with the left hand. (Tr. 111). The VE responded Plaintiff could perform all three jobs previously given. (Tr. 111). A third hypothetical was given with the same restrictions as the second one, except Plaintiff would be limited to sedentary work, and the VE responded Plaintiff could be a charge account clerk, or an order clerk for food and beverage. The next hypothetical involved whether or not an employer would accept the use of headphones and music playing at work. (Tr. 112).  The VE responded some jobs like a cashier would not allow it, however housekeeping and sales attendants would most likely allow it. (Tr. 113-15).

The ALJ found Plaintiff could not return to any past relevant work, and she had the following severe impairments; morbid obesity, seizure disorder, asthma, obstructive sleep apnea, right knee osteoarthritis, depressive disorder, posttraumatic stress disorder, and schizoaffective disorder. (Tr. 50). Plaintiff had been diagnosed with peripheral edema, headaches, hypertension, diabetes mellitus, neck pain, anemia, and vitamin D deficiency, but these conditions imposed only minimal limitations on the claimant's ability to perform basic work activities. (Tr. 50). The Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 51).  The ALJ found the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she could never climb ladders, ropes or scaffolds, could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, could frequently finger objects with the right upper extremity and only occasionally finger objects with the left upper extremity. (Tr. 52).  She

could also have frequent exposure to heat and cold, and irritants such as fumes, dust, gases, odors, and poor ventilation. (Tr. 52). Plaintiff must avoid the use of moving machinery, commercial driving and unprotected height and she can perform simple, routine, and repetitive tasks. (Tr. 52). The work environment must be free of fast-paced production requirements, involving only simple work related decisions and routine work place changes. (Tr. 52).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 20 C.F.R. § 416.905(a); see also 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520– to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff contends the ALJ erred in assessing the opinion of her treating source. (Doc. 17, at 5). Specifically, Plaintiff argues Yuan-Hua Thakore, MD, and Heather K. Poma, Psy.D. should be attributed treating physician status. (Doc. 17, at 7). She also contends the ALJ erred in

the weight given to the other source opinions of her social workers, Ms. Reddest and Ms. Vantine. (Doc. 17, at 6-7).

***Treating Physician Rule***

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); see also SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242.

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.1527(c)(2). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability – the extent to which a physician supports his findings with medical signs and laboratory findings; (4) consistency of the opinion with the record as a whole; and (5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

10

reasons for that weight." *Id.* An ALJ's reasoning may be brief, *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009), but failure to provide any reasoning requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409B10 (6th Cir. 2009).

Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows her physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the agency's decision is supplied. *Wilson*, 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id*

Yuan-Hua Thakore MD. and Heather Poma PsyD.

The ALJ addressed the opinion of Yuan-Hua Thakore MD. and Heather Poma Psy.D. as follows:

> In November 2012, the claimant's psychologists and psychiatrist stated that the claimant's symptoms were vocationally debilitating and she was not able to work even part time. Specifically psychology resident Heather Poma Psy.D., asserted that the claimant would have difficulty more than twenty percent of the day in following detailed instructions, working with others, making simple decisions, interaction with others, and adapting to changes. I grant little weight to the conclusion that the claimant was unable to work. Such assessment involves vocational considerations about which the mental health professionals were not experts. Moreover, the determination of the ability to work is reserved to the Commissioner. I also afford little weight to Ms. Poma's specific assessment. While the claimant had ongoing schizoaffective symptoms, the evidence does not support such extreme degree of restrictions. Rather with treatment, the claimant appeared to stabilize to some degree, with largely logical thoughts and appropriate behavior. Such capabilities indicate that she was able to complete the basic level of work described in the residual functional capacity.

(Tr. 55).

The determination of the ability to work is reserved to the Commissioner, and is outside the realm of a mental health professionals' expertise. Because Drs. Poma and Thakore made the

11

determination she could not work even part-time, the ALJ can afford their opinion on this matter little weight because it is not a medical opinion at all; but, rather, an opinion regarding the ultimate issue of whether Plaintiff was disabled, which is to be determined by the Commissioner. 20 C.F.R. § 404.1527(d) *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding the determination of disability is the prerogative of the Commissioner, not a medical source). Therefore, the ALJ gave good reasons for assigning little weight to Drs. Thakore and Poma's opinion and his judgment should be affirmed.

Moreover, the specific opinion regarding her ability to maintain concentration is not supported by the evidence. Such extreme restrictions are not consistent with the evidence in the record, which shows that although Plaintiff suffers from schizoaffective symptoms she is able to maintain logical thoughts, appropriate behavior, and maintain personal relationships. (*See* Tr. 392-93, 398-99, 468, 548-49, 562, 568). Drs. Thakore and Poma opined restrictions that were inconsistent with the record as a whole. As discussed in the ALJ's opinion, the evidence displays Plaintiff can perform the basic level of work described in her RFC. (Tr. 53-55). Accordingly, the ALJ gave good reason to accord little weight to opinion of Drs. Thakore and Poma.

***Other Source Opinion***

Plaintiff asserts the ALJ erred in evaluating the opinions of Ms. Reddest and Ms. Vantine. The regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider opinions and evidence from "other sources", including "non-medical sources" listed in §§ 404.1513(d) and 416.913(d). SSR 06-3p clarifies opinions from other sources "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-3p, 2006 WL 2329939, at *3 (Aug. 9, 2006). SSR 06-3p also states other sources should be evaluated

under the factors applicable to opinions from "acceptable medical sources" – i.e., how long the source has known and how frequently the source has seen the individual; consistency with the record evidence; specialty or area of expertise; how well the source explains the opinion; supportability; and any other factors that tend to support or refute the opinion. SSR 06-3p; 20 C.F.R. § 404.1527(d)(2).

In the Sixth Circuit, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources'". *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). While the ALJ "does not have a heightened duty of articulation when addressing opinions issued by 'other sources', the ALJ must nevertheless "consider" those opinions. *Hatley v. Comm'r of Soc. Sec.*, 2014 WL 3670078 (N.D. Ohio); *see also Brewer v. Astrue*, 2012 WL 262632, at *10 (N.D. Ohio 2012) ("SSR 06-3p does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'").

Andrea Reddest, LISW

The ALJ addressed Ms. Reddest, LISW, as follows:

Three months later, Andrea Reddest, LISW, the claimant's counselor, asserted that the claimant would have noticeable difficulty more than twenty percent of the time with understanding, memory, maintaining concentration for extended periods, and following instructions (B6F/2). According to Ms. Reddest, the claimant would have similar struggles working without interruptions and responding to changes in the work setting (B6F/3). I afford little weight to Ms. Reddest opinion. She was not an acceptable medical source. More importantly, the medical record does not support such extreme limitations. While the claimant had ongoing problems with depression and hallucinations, she generally had appropriate behavior and logical thoughts. Such facts suggest that she was capable of more than Ms. Reddest asserted.

(Tr. 55).

Thus, the ALJ found Ms. Reddest's opinion should be given little weight because it is inconsistent with the record. (Tr. 55). The ALJ did not fully explain his reasoning at this

13

particular point, but did explain clearly in the analysis what his reasoning was. Ms. Reddest is a social worker, and not an acceptable medical source. Consequently, the ALJ did not have to accept, explain, or give good reasons for the weight he gave to Ms. Reddest's statements about Plaintiff's limitations, the discussion of the evidence in the opinion was sufficient.

The ALJ showed while Plaintiff had ongoing problems with depression and hallucinations, she generally had appropriate behavior and logical thoughts. (Tr. 55).  One example the ALJ used was in January 2011, Plaintiff was generally calm, well-kempt, had fair contact, her cognition was grossly intact, and she denied having any violent ideation. (Tr. 53, 398-99). In February 2011, Plaintiff's thoughts were linear and relevant, and in late 2011 she reported therapy techniques helped alleviate her stress. (Tr. 54, 468, 473). Plaintiff continued to have cooperative and logical thoughts 2012, Treatment notes from August 2012 reflect Plaintiff's mood was stable, she was alert and oriented, and she said she was doing alright overall. (Tr. 54, 560).  There is sufficient evidence to support the ALJ's conclusion Plaintiff was more capable than Ms. Reddest opined and his decision is affirmed. (Tr. 55).

Maureen Vantine, ANP

The ALJ addressed the opinion of Ms. Vantine as follows:

In May 2012, Maureen Vantine, ANP one of the claimant's treating sources, opined that the claimant could lift ten to twenty pounds occasionally and five to ten pounds frequently. Ms. Vantine said that the claimant had an unsteady gait, limiting to her standing and walking only one hour per workday and ten minutes at a time. According to Ms. Vantine, the claimant could never climb, balance, kneel, crawl. Ms. Vantine also noted that the claimant had ongoing mild left extremity weakness. According to Ms. Vantine, the claimant would be off task ten percent of the day because of symptoms impairing her concentration and attention. Ms. Vantine concluded that the claimant would miss one day of work per month. I grant little weight to Ms. Vantine's opinion. She was not an acceptable medical source. More importantly, the record does not support such extreme restrictions. Rather, the claimant had only minor strength deficits and she did not appear to have regular substantial seizures. Such facts suggest that she was capable of more than Ms. Vantine asserted.

14

(Tr. 57).

The ALJ was not obligated to give good reasons for the weight he attributed to Ms. Vantine's opinion because, as a nurse, she was not an acceptable medical source. 20 C.F.R. §§ 404.1513 (a), (d)(1). Therefore, similar to Ms. Reddest, the ALJ is not obligated to give good reasons for the weight attributed. The ALJ stated Plaintiff had only minor strength deficits on her right side and mostly normal strength on her left side. (Tr. 56, 57, 541-42, 548-49, 551, 575). The discussion of medical evidence elsewhere in the analysis clearly show the record could indeed support a range of light work, inconsistent with Ms. Vantine's statement. Also the ALJ stated in 230 pages of medical records, seizures are only mentioned twice, which is not consistent with Plaintiff having regular substantial seizures. (Tr. 57, 380-81, 575). Therefore, the ALJ's decision regarding Ms. Vantine's opinion was based on substantial evidence and is affirmed. (Tr. 57).

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB applied the correct legal standards and is supported by substantial evidence. Therefore, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

s/James R. Knepp, II
United States Magistrate Judge

15